UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:21-cr-40 |
| Plaintiff, | Hon. Robert J. Jonker |
| v. | Chief United States District Judge |
| CHRISTOPHER ALLAN BODEN, a/k/a "Captain," LEESA BETH VOGT, a/k/a "Lis Bokt," a/k/a "Moose," and DANIEL REYNOLD DEJAGER, a/k/a "Daniel Reynold," a/k/a "Daniel Miester," a/k/a "Danichi," | Hon. Phillip J. Green United States Magistrate Judge |
| Defendants. | |
| _____/ | |

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS COUNTS 1–14 OF THE INDICTMENT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND...............................................................................................1

ARGUMENT.......................................................................................................................2

    I.     18 U.S.C. § 1960, not 31 U.S.C. § 5330, governs the meaning of "money transmitting." ...........................................................................................2

    II.    FinCen guidance cannot alter the federal criminal code .......................................6

    III.   The case law on which the Government relies is unpersuasive .............................7

# TABLE OF AUTHORITIES

Page(s)

### Cases

*United States v. Faiella*,
   39 F. Supp. 3d 544 (S.D.N.Y. 2014)..............................................................................7, 8

*United States v. Harmon*,
   474 F. Supp. 3d 76 (D.D.C. 2020) ................................................................................7, 8

*United States v. Stetkiw*,
   No. 18-20579, 2019 WL 417404 (E.D. Mich. Feb. 1, 2019) ..........................................7

### Statutes

18 U.S.C. § 1960......................................................................................................................passim

31 U.S.C. § 5330......................................................................................................................passim

### Other Authorities

2013 FinCen Guidance ....................................................................................................................8

2014 FinCen Guidance ....................................................................................................................6

2019 FinCen Guidance ................................................................................................................7, 9

2019 Sen. Bill 1883 .........................................................................................................................5

## INTRODUCTION

Rather than grapple with the plain language of section 1960, the Government mischaracterizes the Defendants' argument as hoping to "trump" legal definitions with plain language. The Government hopes the Court will ignore that the "legal definitions" and regulations to which it points are found in a different section—indeed a different *title*—of the U.S. Code, not the statute the Government charges the Defendants with violating here. Indeed, the *differences* between those definitions and the definition provided in section 1960 illustrate that the acts alleged in the Indictment are not violations of section 1960.

## FACTUAL BACKGROUND

Defendants recognize that the Court cannot resolve factual disputes on a Rule 12 motion. Nevertheless, Defendants note a few key issues that provide context for the behavior the Government seeks to punish here.

For one thing, Defendants' purpose in selling bitcoin was to create a sustainable funding source for The Geek Group. Defendants' sales were hardly part of the get-rich-quick scheme the Government suggests. On the contrary, Defendants used the money to fund the nonprofit's extensive education efforts. Despite its far-reaching membership,[1] the Geek Group was supported only in small part by membership fees; it was kept afloat primarily through large donations—many coming from Defendants themselves—which permitted The Geek Group's educational activities. (Relatedly, the Government's characterization of Mr. Boden as a "loan shark" strains the term.)

---

[1]  The Geek Group supported members in all 50 states and over 100 countries.

1

The Government also notes several of Defendants' Facebook conversations which, as illustrated below, do not constitute violations of 18 U.S.C. § 1960. The May 9th conversation, for example, centers on whether an office clerk at The Geek Group could make deposits to a shared Chase account. (*See* Gov't Resp. at PageID.135.) While a shared bank account is not a violation of section 1960, this typifies the government's all-expansive construction of "money transmitting." Several other conversations appear to support the Government's structuring claims, but do nothing for the Government's argument regarding the meaning of "money transferring." (*Id.* at PageID.135–136, PageID.139.)

In one remarkable instance, the Government even omits by ellipsis key portions of a conversation to make Mr. Boden's reaction on realizing he had forgotten to test a tornado siren appear as though he was responding to an inquiry from a bank. (*See id.* at PageID.136–138.)

## ARGUMENT

### I.     18 U.S.C. § 1960, not 31 U.S.C. § 5330, governs the meaning of "money transmitting."

The Government acknowledges that section 1960 contains its own definition of "money transmitting." (Gov't Resp. at PageID.143–144.) "[T]he term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier. 18 U.S.C. § 1960(b)(2); (Gov't Resp. at PageID.143–144). As explained in Defendants' opening brief, the plain language this definition captures money as that term is used in the ordinary sense; it also requires the transmission of money from one person or place *to another person or place*. (*See* Defs.' Br. at PageID.113–114, 119–120, 123.)

Yet rather than grapple with the plain meaning of section 1960's definition of "money transmitting," the Government relies on the broader definition of a "money transmitting business" found in a different statute: 31 U.S.C. § 5330(d).[2] (*See* Gov't Resp. at PageID.144.) That statute is part of the Bank Secrecy Act, and the section on which the Government relies imposes only civil penalties for violations. *See* 31 U.S.C. § 5330(e)(1).

But section 1960 does not purport to incorporate the definitions from the Bank Secrecy Act; it includes *its own* definition of money transmitting, and the plain language of that definition controls. In this way, the Government misconstrues Defendants' argument: "[T]he Defendants are incorrect that the ordinary usage of transmission trumps the legal definitions . . . ." (Gov't Resp. PageID.154.) Yet again, the "legal definitions" on which the Government relies are the definitions found in 18 U.S.C. § 1960 and FinCen regulations promulgated pursuant to *the Bank Secrecy Act*.

The Government's approach has three critical flaws. First, none of those "legal definitions" the Government points to are found in section 1960. The statutory definitions on which the Government relies are found in 31 U.S.C. § 5330(d), which expressly notes that its definition of "money transmitting business" is made only "[f]or purposes of this section." Section 1960's

---

[2] The Government confuses the structure of section 1960 in an attempt to graft this broader civil definition from section 5330 onto the narrower section 1960. But section 1960 does not purport to incorporate that definition. Instead, section 1960 defines an "unlicensed money transmitting business" as a "money transmitting business" that meets one of three criteria. The relevant criteria here is found in section 1960(b)(1)(B), which states that an unlicensed money transmitting business is a "money transmitting business" that "fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under that section." 18 U.S.C. § 1960(b)(1)(B). In other words, *if* a defendant is a "money transmitting business" as defined in section 1960, *and if* the defendant fails to register as required under 31 U.S.C. § 5330, *then* the defendant is an "unlicensed money transmitting business" in violation of section 1960.

3

definition of money transmitting likewise explains that it controls terms "as used in this section." 18 U.S.C. § 1960(b).

Second, the Bank Secrecy Act's definition of "money transmitting business" is substantially broader than the definition of "money transmitting" found at section 1960(b)(2). It includes any business that:

> [P]rovides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, or other similar instruments or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system.

31 U.S.C. § 5330(d)(1)(A).

This broader definition illustrates that Congress chose to define "money transmitting" in section 1960 *differently* than it chose to define "money transmitting business" in 31 U.S.C. § 5330(d). Indeed, the Government emphasizes the language from section 5330 that does not appear anywhere in section 1960's definition of "money transmitting." The Government notes that section 5330 includes "any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system." 31 U.S.C. § 5330(d). Section 5330's language including the transmission of "value that substitutes for currency" (on which the Government relies (Gov't Resp. PageID.151)), is absent from section 1960's definition. Congress knew how to craft an expansive definition of "money transmitting." It did so in the portion of the Bank Secrecy Act that requires certain actors to register with FinCen and imposes civil penalties for failing to do so. *See* 31 U.S.C. § 5330(e). It did not do the same in the statute imposing criminal penalties for operating an unlicensed money transmitting business. *See* 18 U.S.C. § 1960(b)(2).

4

Section 5330 is substantively broader in other ways as well. Section 5330 specifically includes as part of its definition "currency exchange" *in addition to* "money transmitting or remittance services." 31 U.S.C. § 5330(d)(1)(A). That Congress felt the need to note currency exchange separately from "money transmitting or remittance services" in section 5330 illustrates that Congress captured a broader range of activities in a civil statute than it did in the statute imposing criminal penalties for operating an unlicensed money transmitting business.

It bears noting that section 5330's broader language that covers "currency, funds, or value that substitutes for currency" did not even appear in section 5330(d) until 2021. The Government recognizes this, and asserts that this recent amendment does not raise an *ex post facto* problem because section 1960 incorporates violations of the regulations promulgated pursuant to section 5330. (Gov't Resp. PageID.144.) This misses the critical point: Congress knew how to use this broader language that captures cryptocurrencies like bitcoin, and did so in the Bank Secrecy Act's registration requirements. Yet Congress left in place the narrower definition of "money transmitting" in section 1960. Moreover, the Senate Judiciary Committee apparently recognized that section 1960's definition is narrower when it reported Senate Bill 1883 to the full Senate last Congress. That bill would have replaced section 1960's definition by specifically incorporating section 5330's definition and further noting that it "includes a person that engages in the transfer, transportation, *or exchange of currency, funds, or value that substitutes for currency by any and all means*, even when not performed for profit." 2019 Sen. Bill 1883.

By ignoring the differences Congress chose to create between these two statutes, the Government's analysis renders the definition of "money transmitting" in section 1960(b)(2) a nullity. If 31 U.S.C. § 5330(d) supplied the definition of "money transmitting" for purposes of

5

section 1960, then the separate, narrower definition of "money transmitting" found in section 1960 has no effect.

## II.   FinCen guidance cannot alter the federal criminal code.

The Government goes a step farther when it points to regulatory guidance issued pursuant to section 5330 to support its expansive view of "money transmitting." (*See* Gov't Resp. at PageID.145.)  The Government's argument is fatally flawed for three reasons.  First, as the Government notes, Congress authorized the Secretary of Treasury "to promulgate regulations *under the BSA* [i.e., the Bank Secrecy Act]." (*Id.* (emphasis added).)  But Congress gave the Secretary of Treasury no such authority to change or expand statutory definitions in the *federal criminal code*.  The interpretation of the definition found in section 1960 is left solely to the courts.

Second, the regulations on which the Government relies only illustrate the difference between 31 U.S.C. § 5330(d) and 18 U.S.C. § 1960(b)(2).  As noted above, section 1960 does not include the "or any value that substitutes for currency" language found in section 5330.  Yet that broader language from section 5330(d) is just what FinCen relied on in promulgating guidance regarding cryptocurrencies like bitcoin:

> FinCEN understands that the exchanger's activities may take one of two forms. The first form involves an exchanger (acting as a "seller" of the convertible virtual currency) that accepts real currency or its equivalent from a user (the "purchaser") and transmits the value of that real currency to fund the user's convertible virtual currency account with the administrator. *Under FinCEN's regulations, sending "value that substitutes for currency" to another person or to another location constitutes money transmission*, unless a limitation to or exemption from the definition applies.

2014 FinCen Guidance 4 (emphasis added).  Again, "value that substitutes for currency" is nowhere to be found in section 1960.

Third, the Government also relies on guidance promulgated in 2019—two years after the facts alleged in the indictment occurred.  The Government relies in part on the platitude in that

6

guidance on a civil statute—that "[t]he BSA regulatory framework begins with an expectation that financial institutions will operate under a culture of compliance"—to dramatically expand the scope of a criminal statute. (*See* Gov't Resp. at PageID.37.) Moreover, that 2019 guidance only reiterates that the regulations promulgated pursuant to 31 U.S.C. § 5330 rely on statutory language not present in section 1960 as the sole hook for regulation under section 5330: "The 2011 MSB Final Rule made clear that persons accepting and *transmitting value that substitutes for currency, such as virtual currency*, are money transmitters." 2019 FinCen Guidance 12 (emphasis added).

### III.  The case law on which the Government relies is unpersuasive.

The Government also points to several cases that have found bitcoin to constitute "money" for purposes of 18 U.S.C. § 1960. Those cases repeat the same methodological errors the Government invites the Court to make in this case. In *United States v. Harmon*, 474 F. Supp. 3d 76 (D.D.C. 2020), for example, the court stated, without recognizing any of the above-noted differences between the two statutes, that Congress intended no difference between the definitions in section 5330 and section 1960. 474 F. Supp. 3d at 101. *Harmon* also erred in relying on regulations promulgated under the Bank Secrecy Act to define a term in a criminal statute. *See id.* The court in *United States v. Stetkiw*, No. 18-20579, 2019 WL 417404 (E.D. Mich. Feb. 1, 2019), made the same error, expressly relying on FinCen's regulations promulgated under the Bank Secrecy Act to define a term in title 18. *See* 2019 WL 417404, at *2. *United States v. Faiella*, 39 F. Supp. 3d 544 (S.D.N.Y. 2014), repeats the same error: "Faiella clearly qualifies as a 'money transmitter' for purposes of Section 1960. The Financial Crimes Enforcement Network ("FinCEN") has issued guidance specifically clarifying that virtual currency exchangers constitute "money transmitters" under its regulations. 39 F. Supp. 3d at 546. The examples to which

7

the Government points mis-analyzed this issue, largely deferring to the Secretary of Treasury to define terms in the criminal code.

The Government also relies on the *Harmon* case to assert that the arm's-length, two party transaction is "transmitting" for purposes of section 1960. (Gov't Resp. PageID.152.) Its reliance is misplaced for two reasons. For one, *Harmon* repeats the same methodological error noted above: it expressly relies on FinCen's analysis pursuant to a different statute to determine the meaning of a word in the criminal code. *See* 474 F. Supp. 3d at 108. Second, *Harmon* is distinguishable from the present indictment. In *Harmon*, the Government charged the defendant with operating a business that "enabled customers, for a fee, to send bitcoins to designated recipients," and of "transferring bitcoins *from one person or location to another*." 474 F. Supp. 3d at 103 (emphasis added). Critically, the court in *Harmon* recognized that the transactions at issue involved movement of bitcoins from a wallet *controlled by a third party* to the defendant's customer. *See id.* at 104 (noting that "the administrator of AlphaBay, referenced in the indictment, had some control over AlphaBay wallets" at issue (alterations and quotations omitted)). The court in *Faiella* recognized the same critical fact: "These were, in essence, transfers to a *third-party agent*, Silk Road, for Silk Road users did not have full control over the Bitcoins transferred into their accounts." 39 F. Supp. 3d at 546. Both cases are consistent with the meaning of "transmitting" explained in Defendants' opening brief.

Even the inapposite FinCen guidance on the issue refers to transfers to third parties. The 2013 guidance speaks to transmitting a customer's money to an account with the cryptocurrency issuer. 2013 FinCen Guidance 4 (noting a scenario that "involves an exchanger (acting as a 'seller' of the convertible virtual currency) that accepts real currency or its equivalent from a user (the 'purchaser') and transmits the value of that real currency to fund the user's convertible

8

virtual currency account *with the administrator*." (emphasis added)). The 2019 guidance is similar, noting that "transmission to another location occurs when an exchanger selling CVC accepts real currency or its equivalent from a person and transmits the CVC equivalent of the real currency *to the person's CVC account with the exchanger*." 2019 FinCen Guidance 11-12 (emphasis added).[3]

In a last-ditch effort to sweep Defendants acts within the scope of section 1960, the Government attempts to re-case transfers of money *between the Defendants* through a shared bank account--not made on behalf of a customer--as money transferring. This only illustrates the over-breadth of the Government's construction of section 1960.

Dated: August 26, 2021

/s/ Brian P. Lennon
Brian P. Lennon (P 47361)
Paul H. Beach (P82036)
Warner Norcross + Judd LLP
150 Ottawa Avenue, NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
blennon@wnj.com
pbeach@wnj.com

*Attorneys for Defendant Christopher Boden*

---

[3] The FinCen guidance further explains that "[a]n exchanger is a person engaged as a business in the exchange of virtual currency for real currency, funds, or other virtual currency, while an administrator is a person engaged as a business in issuing (putting into circulation) a virtual currency, and who has the authority to redeem (to withdraw from circulation) such virtual currency." 2019 FinCen Guidance 13.

9

| | |
|---|---|
| Dated: August 26, 2021 | */s/ Brett A. Purtzer* (by BPL w/ permission)<br>Brett A. Purtzer<br>HESTER LAW GROUP, INC., P.S.<br>1008 S. Yakima Avenue, Suite 302<br>Tacoma, WA 98405<br>(253) 272-2157<br><br>*Attorneys for Defendant Daniel Reynold DeJager* |
| Dated: August 26, 2021 | */s/ Matthew G. Borgula* (by BPL w/ permission)<br>Matthew G. Borgula (P57330)<br>Laura J. Helderop (P82224)<br>SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC<br>60 Monroe Center NW, Suite 500<br>Grand Rapids, MI 49503<br>(616) 458-5500<br><br>*Attorneys for Defendant Leesa Vogt* |