UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER ALLAN BODEN,
a/k/a "Captain,"

Defendant.

No. 1:21-cr-00040

HON. ROBERT J. JONKER
Chief United States District Judge

/

PLEA AGREEMENT

This constitutes the plea agreement between Christopher Allan Boden and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>The Defendant Agrees to Plead Guilty.</u> The defendant agrees to plead guilty to Counts 2, 16, and 21 of the Indictment. Count 2 of the Indictment charges the defendant with operating an unlicensed money transmitting business in violation of Title 18, United States Code, Section 1960. Count 16 of the Indictment charges the defendant with money laundering in violation of Title 18, United States Code, Section 1956(a)(3)(B). Count 21 of the Indictment charges the defendant with structuring, in violation of Title 31, United States Code, Section 5324(a)(3), (d).

2. <u>The Defendant Understands the Crimes.</u>

    a. In order for the defendant to be guilty of violating Title 18, United States Code, Section 1960, the following must be true:

    i. First, the defendant knowingly operated a money transmitting business.

    ii. Second, the business affected interstate commerce.

    iii. Third, either (A) the defendant and business failed to comply with the money transmitting business registration requirements of 31 U.S.C. § 5330 or regulations prescribed under such section, and the defendant knew the business was not registered with the federal government, or (B) the defendant knew that the business involved the transmission of funds derived from a criminal offense and intended to be used to promote or support unlawful activity, specifically that the funds were used to purchase or derived from selling controlled substances.

 b. In order for the defendant to be guilty of violating Title 18, United States Code, Section 1956(a)(3)(B), the following must be true:

    i. First, the defendant conducted a financial transaction.

    ii. Second, the property involved in the financial transaction was represented to be the proceeds of the distribution of a controlled substance.

    iii. Third, the defendant had the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity.

    c.    In order for the defendant to be guilty of violating Title 31, United States Code, Section 5324(a)(3), (d), the following must be true:

        i.    First, the defendant engaged in acts of structuring.

        ii.    Second, the defendant knew that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000.

        iii.    Third, the defendant acted with the intent to evade this reporting requirement.

        iv.    Fourth, the defendant did so while violating another law of the United States or as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

The defendant is pleading guilty because the defendant is guilty of the charges described above.

3.    <u>The Defendant Understands the Penalties.</u>

    a.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1960, is the following:

        i.    not more than five years of imprisonment;

        ii.    not more than three years of supervised release;

        iii.    a $250,000 fine; and

        iv.    a $100 mandatory special assessment.

    b.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(3)(B), is the following:

        i.    not more than twenty years of imprisonment;

    ii. not more than three years of supervised release;

    iii. a $250,000 fine; and

    iv. a $100 mandatory special assessment.

  c. The statutory maximum sentence that the Court can impose for a violation of Title 31, United States Code, Section 5324(a)(3), (d), is the following:

    i. not more than ten years of imprisonment;

    ii. not more than three years of supervised release;

    iii. a $500,000 fine; and

    iv. a $100 mandatory special assessment.

The defendant agrees to pay the special assessments at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

  4. <u>Supervised Release Defined.</u> Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

  5. <u>Asset Forfeiture and Financial Accountability.</u> The defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which includes all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 371, conspiracy to violate Title

4

18, United States Code, Section 1960 (Count 1 of the Indictment), and any property traceable to such property. Specifically, the defendant agrees to forfeit all right, title, and interest in all virtual currency accessible from wallets associated with two Trezor devices seized from The Geek Group on December 21, 2018, comprising at least 0.365 BTC. The defendant further agrees to the entry of a forfeiture money judgment in the amount of $75,000, which sum represents the proceeds derived from the commission of the felony violation alleged in Count 1 of the Indictment, or is traceable thereto.

      6.      **Factual Basis of Guilt.**      The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

      a.      The defendant was the President of The Geek Group in Grand Rapids, Michigan. There he worked with the Executive Director, Leesa Beth Vogt, a/k/a "Lis Bokt," a/k/a "Moose," a consultant, Daniel Reynold DeJager, a/k/a "Daniel Reynold," a/k/a "Daniel Miester," a/k/a "Danichi," and Jeremy Swink, among others. In his capacity as President the defendant was ultimately in charge of all operations at The Geek Group and regularly directed its staff members.

      b.      Between approximately March 2017 and December 2018, the defendant and his co-defendants conspired and agreed to operate, and in fact operated, an unlicensed money transmitting business. The defendant was in the business of selling bitcoin to various customers, and supervised and directed others at The Geek Group in selling it. He obtained the bitcoin from DeJager, who in turn was purchasing it from exchanges. The defendant took a profit from the proceeds of the bitcoin sales and used the rest to purchase more bitcoin to be sold

5

in the scheme. The defendant and his co-defendants sold more than $740,000 in bitcoin. The defendant knew that some of his customers were involved in buying and selling controlled substances, and he sold these customers bitcoin knowing that the cash he received in return was derived from the sale of controlled substances, or that the bitcoin would be used to purchase controlled substances.

      c. The defendant sent, or directed others to send, U.S. currency, including the proceeds from the sales of bitcoin, to DeJager using a Chase Bank account with a number ending in 6810, or by other means. The defendants recorded deposits in the Chase Bank account by sending Facebook messages to each other. The defendant and his co-defendants kept each financial transaction—both with the banks and the exchanges—below $10,000 so as to avoid detection by the banking system. The defendant and his co-defendants never registered as a money services business or money transmitter with the United States Department of the Treasury.

      d. The defendant and DeJager sometimes "mixed" or "tumbled" the bitcoin—that is, they laundered it—before selling it. The defendant and DeJager agreed to do this in order to promote their unlicensed money transmitting business and to conceal the origin of the bitcoin. The defendant would tell customers that he sold "clean" bitcoin that could not be traced to them, unlike licensed exchanges, which the defendant said sold "dirty" bitcoin. For example, in one of the instances of mixing, on June 5, 2017, DeJager mixed 2.14 BTC before sending it to Boden. He did so by using a mixing service. The bitcoin represented the proceeds of operating an unlicensed money transmitting business, and the defendant knew this. In mixing

6

the bitcoin, the defendant intended to conceal and disguise the origin of the bitcoin and promote the operation of the unlicensed money transmitting business.

   e. On December 7, 2018, the defendant and DeJager sold bitcoin at The Geek Group to an undercover agent in exchange for $15,000 in cash. During that transaction, and during an earlier transaction at The Geek Group during which the defendant and DeJager were present, the undercover agent represented that the cash used to purchase the bitcoin was proceeds from the sale of cocaine. In selling the bitcoin to the undercover agent, the defendant intended to conceal and disguise the origin of the cash.

   f. The defendant directed Vogt and Swink to deposit proceeds from the sales of bitcoin at The Geek Group in the Chase Bank account. The co-defendants intentionally deposited less than $10,000 each day that deposits were made, at the defendant's direction and with his agreement, for the purpose of avoiding the bank filing a currency transaction report. In total, the defendant deposited, directed the deposit of, or aided and abetted the deposit of, more than $100,000 in a 12-month period, which included January 2018, as part of a pattern of illegal activity. The defendant so acted while violating other laws of the United States, namely conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960, operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960, and money laundering (including but not limited to conspiracy to launder money), in violation of 18 U.S.C. § 1956.

   g. During January 2018, the defendant supervised and aided and abetted 38 ATM deposits at Chase Bank totaling $64,605, each consisting of currency not exceeding $10,000, and 17 related debits to virtual currency exchanges Gemini and Glidera totaling

$63,480.03. The deposits were made at branches in Grand Rapids and East Grand Rapids, Michigan. The defendant was notified of the deposits by the co-defendants who made them on Facebook. The defendant knew that the deposits were to be used by DeJager to purchase more bitcoin, which would then be transferred to the defendant to sell, or for other staff members at The Geek Group to sell.

7. The United States Attorney's Office Agrees.

   a. Dismissal of Other Counts/Charges. The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against the defendant at the time of sentencing. The defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable range under the United States Sentencing Guidelines ("Guidelines"), where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the calculated Guidelines range. By this agreement the defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

   b. Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the U.S. Attorney's Office will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

8

8. <u>The Sentencing Guidelines.</u>   The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement. The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

9. <u>There is No Agreement About the Final Sentencing Guidelines Range.</u>   The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines factors or the appropriate Guidelines range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

10. <u>Waiver of Constitutional Rights.</u>   By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

9

a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

b. The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against the defendant.

d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

f. By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

11. <u>Waiver of Other Rights.</u>

a. <u>FOIA Requests.</u> The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

b. <u>Hyde Waiver.</u> The defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious,

frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

12. <u>The Court is Not a Party to this Agreement.</u> The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The defendant understands that no one—not the prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

13. <u>This Agreement is Limited to the Parties.</u> This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

14. <u>Consequences of Breach.</u> If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the

same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. <u>This is the Complete Agreement.</u> This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements,

understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

9/30/21
Date

ANDREW BYERLY BIRGE
United States Attorney

JUSTIN M. PRESANT
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

9/29/2021
Date

CHRISTOPHER ALLAN BODEN
Defendant

I am Christopher Allan Boden's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

9/29/2021
Date

BRIAN PATRICK LENNON
Attorney for Defendant

13