IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,             No.  1:21cr40-1/2/3

  vs.

CHRISTOPHER ALLAN BODEN,
LEESA BETH VOGT and
DANIEL REYNOLD DEJAGER,

      Defendants.


Before:

               THE HONORABLE ROBERT J. JONKER,
                 U.S. District Judge
                Grand Rapids, Michigan
             Monday, September 20, 2021
            Motion to Dismiss Proceedings

APPEARANCES:

          MR. ANDREW BIRGE, U.S. ATTORNEY
          By:  MR. JUSTIN MATTHEW PRESANT
          330 Ionia Avenue, NW
          P.O. Box 208
          Grand Rapids, MI 49501-0208
          (616) 808-2184

               On behalf of the Plaintiff;

          MR. BRIAN P. LENNON
          Warner Norcross & Judd LLP
          1500 Warner Building
          150 Ottawa Avenue NW
          Grand Rapids, MI 49503
          (616) 752-2089

               On behalf of Defendant Boden.

```
 1                    MR. MATTHEW GEORGE BORGULA
                      Springstead Bartish Borgula & Lynch PLLC
 2                    60 Monroe Center Street, NW, Suite 500
                      Grand Rapids, MI 49503
 3                    (616) 458-6007

 4                            On behalf of Defendant Vogt.

 5                    MR. BRETT A. PURTZER
                      Hester Law Group
 6                    1008 South Yakima Avenue, Suite 302
                      Tacoma, WA 98405
 7                    (253) 272-2157

 8                            On behalf of Defendant Dejager.

 9         REPORTED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          09/20/2021

2          (Proceedings, 1:58 p.m.)

3          LAW CLERK:  The United States District Court for the

4  Western District of Michigan is now in session.  The Honorable

5  Robert J. Jonker, chief judge, presiding.

6          THE COURT:  We're here on the case of the United

7  States against Chris Boden and others, 1:21cr40.  We have a

8  motion to dismiss from the three remaining Defendants that's

9  addressed to Counts 1 to 14 of the superseding indictment.

10  Maybe it's the regular indictment.  Is it superseding or the

11  original?

12          MR. PRESANT:  Original.

13          THE COURT:  Original indictment.  So there hasn't been

14  a superseding.  In any case, the first 14.  And we've read the

15  materials of course.  I wanted it to be scheduled for a hearing

16  because certainly when I first started reading through the

17  materials bitcoin was pretty new to me.  I had some questions

18  as well at the plea colloquy of Co-Defendant Swink.  I've had a

19  chance to go through it now.  I appreciate the briefing of the

20  parties and we'll give you each a chance to highlight where you

21  stand on it.

22          For what it's worth, my sense is that after reading

23  all the materials, that the Defense has the uphill climb here

24  that the two premises featured, bitcoin isn't money and there

25  was no transmission in any event, are going to be difficult to

1    square with what the statute that is § 1960 all by itself has

2    for definitional purposes, and certainly beyond that broader

3    authority.  But I am willing to listen and make sure I

4    understand where the Defense is coming from, but I wanted you

5    to know that as you started.  Don't know who wants to go first.

6    Mr. Lennon, you were top of the line I think on the signatures

7    so I'll start with you.

8             MR. LENNON:  Well, in my --

9             COURT REPORTER:  Could we have appearances, please?

10             THE COURT:  Oh, I'm sorry.  Let's do that.  Go ahead.

11             MR. PRESANT:  Good afternoon, Your Honor.  Justin

12    Presant for the United States.

13             MR. LENNON:  Good afternoon, Your Honor.  Brian

14    Lennon, Warner Norcross & Judd, with my client Chris Boden.

15             THE COURT:  All right.  Thank you.

16             MR. BORGULA:  Good afternoon, Your Honor.  Matt

17    Borgula on behalf of Lisa Vogt, who is seated to right.

18             THE COURT:  Thanks.

19             MR. PURTZER:  Your Honor, good afternoon.  Brett

20    Purtzer here on behalf of Mr. Dejager, standing to my right.

21             THE COURT:  Okay.  Thanks.  Great.  Welcome everybody,

22    and we'll go to Mr. Lennon.

23             MR. LENNON:  Thank you, Your Honor.

24             What we were hoping that the Court would see this as

25    an interesting issue.  There is no Sixth Circuit case law.

1   There is a, we think, a very robust opinion out of New York in

2   Petix by the United States Magistrate Judge who really looked

3   at this issue.  But in preparing over this weekend, I decided

4   just to do a little ground game.  Went to the D&W, asked Tony

5   if I could pay for my groceries in bitcoin.  The answer was no.

6   Got a haircut.  Asked if I could pay for it in bitcoin, the

7   answer was no, and so on.  Can't buy coffee and anything else.

8   So the fact that other judges -- District Court Judges and

9   otherwise, have determined otherwise with arguably not very

10   robust analysis, we're hoping the Court will dive a little

11   deeper and look at the fact that bitcoin, whether it's billed

12   with a big B or little B, cryptocurrency in general, is not

13   money pursuant to 18 USC 1960.

14          We also have the issue with looking at the clear, I

15   believe, legislative intent from the Patriot Act of what this

16   was meant to do.  Not are -- which is not addressed by any of

17   the behavior alleged in the indictment.

18          I'll acknowledge that the transmitting aspect, which

19   is actually defined in the statute, is a little tougher

20   analysis, but I don't think the Court needs to get there.  I

21   think it's easiest, cleanest, and most appropriate just for the

22   Court to look at whether bitcoin is under the more narrow

23   definition under Black's or Webster's that it's backed by a

24   government currency.  And --

25          THE COURT:  You got to be a little concerned about El

1    Salvador before you go too far down that route.  They've just

2    adopted it as their currency.

3         MR. LENNON:  I don't think I'll ever want to turn to

4    El Salvador or Venezuela or any place like that as a standard

5    that we should follow.  In this case bitcoin is chattel.  It

6    meets the indicia of chattel much more so then it does of

7    money, and a key component is that, you know, the elements that

8    it is not exchanged the way that money would be.  It is

9    exchanged more the way services could be done, paid for by

10   money or a whole list of things.  And again, just the practical

11   analysis is that, you know, it does have value.  There is no

12   doubt about it.  That value obviously wildly fluctuates, but at

13   the end of the day the holder of that is very limited as to

14   what they can, quote-unquote, buy with that.  And it's

15   certainly by no means a common form of currency or money as

16   defined.

17        So that's -- I know the Court -- I don't want to

18   rehash -- you know, I know the Court has read our briefs, but

19   we believe that that is the cleanest, easiest, most compelling

20   and most appropriate argument is that we ask the Court to find

21   that it's not money pursuant to the criminal statutes.  And

22   frankly, you know, turning to Title 31 or turning to FinCEN

23   guidance should not, in light of everything else, the practical

24   nature of it, the fact that it meets more of the elements of

25   the property, the fact that the legislative history doesn't --

1    you know, none of that conduct, if you will, even alleged would

2    be addressed under there, we'd ask this Court grant our motion

3    and dismiss Counts 1 through 14.

4          THE COURT:  All right.  Just pushing you a little bit

5    on your example.  If I went to your store for my haircut or

6    coffee or whatever else you went to get, and I tried to pay

7    with Euros, I bet they wouldn't have taken my Euros either, yet

8    you don't doubt Euros are money.

9          MR. LENNON:  No doubt Euros are backed by -- but they

10   are -- well, there may be some that --

11         THE COURT:  There may be some that take bitcoin, too.

12   You just have to look for the little sign in the shop window.

13         MR. LENNON:  But Euro also -- again, so that would

14   address how universally exchanged they are.  And obviously, we

15   haven't done any kind of statistical study, but I would guess

16   that it's -- might be more likely, maybe not Euros, but

17   Canadian coin or something like that particularly around the

18   border that you find more businesses that would accept that

19   than bitcoin for services.  You know, there is obviously

20   exchange rates that are -- that are available to look at.

21   You'd have to be fairly sophisticated as a merchant to find out

22   what the bitcoin rate is on that day.  You'd have to have an

23   account.  Whereas a Euro or Canadian bill or English -- or

24   Irish punt, you know, there is banks that would exchange those,

25   and banks, as far as I know, do not exchange bitcoin.

1          THE COURT:  Okay.  Thank you.

2          MR. LENNON:  Thank you, Your Honor.

3          THE COURT:  Who wants to go next?  Mr. Borgula?

4          MR. BORGULA:  Your Honor, I won't repeat the same

5   thing Mr. Lennon said or the issues that we have identified in

6   our briefs.  I would like to address the Court's example.  I do

7   think that Canadian money is accepted.  Growing up in Detroit

8   certainly Canadian coins and dollars were universally accepted

9   along with U.S. currency.

10          THE COURT:  Around here it depends on the exchange

11   rate.  If it's fairly close they take it, and if it wasn't for

12   a while then they wouldn't take my Canadian quarters.

13          MR. BORGULA:  You had to slip them in without anyone

14   noticing.  That's why they started -- we didn't like our Susan

15   B. Anthony dollars because they looked too much like the loons,

16   the Canadian dollars, and they screwed up the soda machines.

17          I do think that if -- you know, if El Salvador goes to

18   a situation where they have bitcoin, then I don't think anybody

19   at the airport exchange counters are going to be taking any El

20   Salvador and -- the microphones pick everything up.

21          I do think that takes it out of the category of

22   currency that's in the normal course of exchange and I

23   anticipate you would see that.  But to the Court's point, I

24   think in the future electronic currency is where we're headed.

25   And at some point in the future bitcoin or other currencies

1    like this are going to be regulated by governments, and they

2    are going to become more mainstream.  But what's not in the

3    future yet is the RICO statute, 1960.  I think that that is --

4    at the time that was drafted and at the time the Bank Secrecy

5    Act was drafted, bitcoin certainly wasn't something that

6    anybody in the legislature was thinking of, and so this is a

7    model of the courts at this point determining whether or not it

8    fits into what at the time was not even known.  I think that

9    the Congress at some point will heavily regulate these currency

10   exchanges -- electronic currency exchanges, but we are not

11   there yet, and I think that the Court must follow the law as

12   currently drafted as opposed to how it's going to be drafted in

13   the future.  And we touch a little bit on it in our briefs,

14   Your Honor, but for now we ask that the Court recognize that as

15   drafted right now the Title 18 offense doesn't include bitcoin

16   or any electronic currency as currency, Your Honor.

17             THE COURT:  Okay.  Thank you.

18             Is it Purtzer?  Welcome.  Am I pronouncing that right?

19             MR. PURTZER:  You are.  Thank you, Judge.  And thank

20   you very much for the opportunity.  Just as I traveled a ways

21   doesn't mean I have to speak but I just want to make one

22   comment --

23             THE COURT:  Sure.

24             MR. PURTZER:  -- in respect to Your Honor's question

25   to Mr. Lennon.  Judge, you are likely correct that a barber may

or may not take a Euro or may or may not take a Canadian
currency for purposes of a haircut, but if you offered a U.S.
dollar they certainly are going to do that. The flip side of
that is if I go to France or Switzerland or Canada and I offer
them a U.S. dollar or I go to Taiwan, they are going to take my
U.S. dollars. That is a recognized form of currency. There is
no question the value of my U.S. dollars. If I were to offer
the same vendors a cryptocurrency, bitcoin or whatever else,
there is absolutely no guarantee, one, that they would
recognize it, secondly, they would take it. And so as both
Mr. Lennon and Mr. Borgula stated, it hasn't been regulated yet
by Congress. Congress can do that, and they are -- frankly,
with respect to the other cases that were cited by the
government in their brief, they just assumed -- and all due
respect to the judge, they assumed that money equals
cryptocurrency, and that's really not the case. And the Petix
case frankly is the only real case that gave any type of an
analysis as to what differentiates bitcoin from money, and the
reasoning is sound in that case.

        Now, understanding it's simply a report and
recommendation, and we understand that, but the analysis is
good. It's appropriate, and it talks about what we are talking
about that it states in the quotes, and this is actually
quoting from an Eleventh Circuit case in an unpublished
opinion. It says while bitcoin can be exchanged for items of

1   value, they are not commonly used as means of exchange.  They

2   are accepted by some but not all merchants or service

3   providers.  And as Mr. Borgula said, it may be something that

4   happens in the future but it's not here now.  And we are

5   dealing with what is occurring currently.

6         So respectfully, Your Honor, we would urge that

7   bitcoin and frankly any cryptocurrency that might be at issue

8   does not equate to money and urge the Court to grant the

9   motion.

10         THE COURT:  All right.  Thank you.

11         Go ahead.

12         MR. LENNON:  One other point, Your Honor?

13         THE COURT:  Sure.

14         MR. LENNON:  And that's just the manufacturer of the

15   cryptocurrency, which is done by -- through -- anybody with a

16   computer can create these things.

17         THE COURT:  Or anybody with a really big computer.

18         MR. LENNON:  Well, yes, but you can't do that -- I

19   mean.  It would be clearly illegal to be manufacturing Euros or

20   hundred dollar bills with your copier.  So it's manufactured in

21   a significantly different way as well.

22         THE COURT:  Okay.  We'll go to Mr. Presant for the

23   government.

24         MR. PRESANT:  Thank you, Your Honor.

25         Like Defense counsel, I won't get into all the

1    arguments raised in the briefing but just want to highlight one
2    and then make a couple responses to some legal issues in the
3    reply brief.

4          Under the authority cited in our brief, including the
5    courts who have interpreted 1960 and 5330 and the regs
6    promulgated thereunder, it's clear that bitcoin is funds,
7    quote-unquote, funds both as that word appears in 1960 and
8    5330, and it's also, quote-unquote, value that substitutes for
9    currency that's used in the regs issued under 5330 as part of
10   the Bank Secrecy Act.

11         And I think part of where we depart from the Defense
12   view of this issue is 5330 -- yes, 1960 contains its own
13   definition of funds, but 5330 and the regulations issued under
14   5330 are expressly referenced in 1960, and that indicates
15   Congress's delegation of authority to define some of these
16   issues to the department of the treasury.

17         And that leads me into the legal issue I referenced,
18   which is to the extent that in their reply brief Defense
19   Counsel are arguing that this Court should not look at those
20   regulations or the FinCEN guidance, I think the Court not only
21   should as other courts have, but it probably should afford some
22   amount of deference to the treasury department's regulations
23   and guidance.  And I was wondering after I read the reply brief
24   whether any courts had done that, and I found two.  So I'll
25   give the Court and Defense Counsel the cites for those.  One is

1  United States versus Mazza-Alaluf.  That's M-a-z-z-a, hyphen,

2  A-l-a-l-u-f.  That's Southern District of New York, 2009, 607

3  F.Supp2d 484, which accorded Chevron deference under the Bank

4  Secrecy Act.  And the other is one that was reversed, though, I

5  believe reversed in part, though, I believe on other grounds.

6  It's a district court decision out of the Northern District of

7  California in 2014.  That's United States versus Hom, H-o-m.

8  And that's 45 F.Supp.3d 1175.  And so I think it would be

9  appropriate for this Court to afford some deference if it found

10  that it needed to.

11         Now, the Government's view is just --

12         THE COURT:  Before you get to that.

13         MR. PRESANT:  Sure.

14         THE COURT:  I was going to ask you about how important

15  you think Chevron deference is to the Government's position,

16  because Chevron deference isn't very popular in the Sixth

17  Circuit or at least certain segments of the Sixth Circuit.

18         MR. PRESANT:  The popularity of deference is

19  declining, Your Honor, which is the reason I was about to make

20  my next point, which is to say I don't think it's that

21  important.  I think the Court can just look at 1960 and

22  interpret funds.  Also looking at the express incorporation of

23  5330, and say, we don't -- I don't need to defer to the agency,

24  but if the Court thought it was a close case I think that's an

25  argument the government would like the Court to consider

1    whether it was appropriate to afford some form of deference

2    whether it's Chevron or our.  I suppose it would depend on the

3    subissue the Court was considering.

4         Just to give one example of the agency's own express

5    interpretation under the law as it existed at the time of the

6    conduct alleged in the indictment, responding to Mr. Borgula's

7    point about whether the courts and Congress and the treasury

8    department have gotten there yet, under 31 CFR 1022.380(e), the

9    treasury department is explicit that the consequence of failing

10   to comply with § 5330 of the statute or the regulations

11   thereunder, and then it goes onto discuss a number of civil

12   penalties.  And at the end of that subsection it says, see 18

13   USC 1960 for criminal penalty for failure to comply with the

14   registration requirements of 31 USC 5330 or the section.  And

15   so as we argue in our brief, I think it's quite clear that 1960

16   is the penalty for failing to register as the Defendants did in

17   this case.

18        And unless the Court has any questions we'll just rely

19   on the other arguments in our brief.  Thank you, Your Honor.

20        THE COURT:  All right.  Thank you, Mr. Presant.

21        Go to any reply from the Defense, and then, also -- so

22   help me make sure I understand the practical significance.  Of

23   course, I can understand anybody facing multiple charges would

24   be happy to see any number of them go away or all of them, but

25   regardless of what happens on this, the Defense still has to

1    deal with 15 to 27 is it, or 28?

2              MR. LENNON:  That's correct, Your Honor.  28 for

3    Mr. Boden.

4              THE COURT:  Okay.  So the structuring and then the

5    three in particular claims that are tied to the proceeds of

6    different kind of illegal activity, drug activity.

7              MR. LENNON:  That's correct, Your Honor.

8              THE COURT:  Okay.  Go ahead.  Any reply?

9              MR. LENNON:  And if I may before I start, may I ask

10   Mr. Presant for the years of those two cases cited for the

11   Chevron deference?

12             THE COURT:  One was 2009.  I think that's the

13   Mazza-Alaluf.

14             MR. PRESANT:  Yeah.  And then the Hom case was 2014.

15             MR. LENNON:  Okay.  I ask because bitcoin wasn't

16   invented until 2009.

17             Your Honor, again, it goes to our argument in the

18   reply brief that we should be applying the plain meaning of the

19   these words, particularly of money under the criminal statute,

20   and then pointing out and emphasizing that -- you know, that

21   this twisted -- I would refer to it as not clear or not

22   straight logic of looking at the regulations that are

23   implementing the civil statute that mention criminal penalties

24   as well should not be the Court's analysis.  I think the Court

25   can take -- can look to simply the definitions of money, the

1   definitions of property, and the other arguments, and dismiss

2   this exercise in logic of rely -- particularly the problem of

3   relying on regulations.

4   And I also agree, I think Chevron deference is not

5   only be questioned in the Sixth Circuit, but I think there is

6   some things teed up for the Supreme Court as well.  I don't

7   think that should be the standard that we look at.  We

8   shouldn't rely on the agencies who are actually promulgating

9   the rules to provide the definitions, particularly when we have

10  a situation where we -- everybody knows what money is.  We can

11  fit it into one thing or the other, whether bitcoin is actually

12  money or property.  We believe it's property.  Thank you.

13          THE COURT:  All right.  Mr. Borgula?

14          MR. BORGULA:  Nothing further, Your Honor.  Thank you.

15          THE COURT:  Mr. Purtzer?

16          MR. PURTZER:  Your Honor, thank you.  Nothing further.

17          THE COURT:  I want to thank the parties for their

18  briefing.  As I said, I did want to have a hearing on it not

19  because I didn't plan to prepare in advance.  Quite the

20  contrary.  Because I wanted to make sure I had my arms around

21  an issue that's new to me at least or at least was new at the

22  time of taking Mr. Swink's plea.

23          I've had a chance to read each parties' position, and

24  the major cases that each are relying on as well as the

25  statutory authority, and I do think I am prepared to give you a

1       decision today so that you can go forward with the case.

2               I do intend to deny the motion to dismiss Counts 1 to

3       14 because fundamentally I do disagree with the Defense

4       premises which are carefully outlined up front early and often.

5       No. 1, that bitcoin isn't money within the meaning of § 1960,

6       and that there wasn't -- or at least isn't alleged to be

7       transmission in any event within the meaning of 1960.

8               I think the contrary is how I would read, really, the

9       plain language of § 1960, even without having to resort to the

10      Bank Secrecy Act and certainly to the Bank Secrecy Act

11      regulations.

12              We all know that the general standard for dismissal of

13      an indictment is a high bar that generally as long as the

14      Government is alleging the elements of the statutory offense,

15      questions about exactly what the factual circumstances were are

16      going to be for the jury.  And that's the starting point from

17      my perspective.

18              When I get to the statutory language that is key to

19      all 14 counts in the indictment, not just the conspiracy to

20      operate an unlicensed money transmitting business in Count 1

21      and to the operation of that in Count 2, but then to the

22      individual charges in Counts 4 to 14, as well as the conspiracy

23      to launder money both promotional and concealment forms.  The

24      key pivot is whether or not the Government has fairly alleged

25      that what happened here is or could, and if the jury accepts

1    the proofs, amount to the unlicensed transfer of money or the

2    operation of an unlicensed money transmitting business.

3          When I look at the statute, § 1960, it's not as though

4    we have to rely just on our understanding of the word money or

5    our understanding of the word transmitting.  There does in

6    (b)(2) at least appear to be some effort to moving toward what

7    Congress had in money by money transmitting.  And it indicates

8    the term money transmitting includes transferring funds on

9    behalf of the public by any and all means, including but not

10   limited to transfers within this country or to locations abroad

11   by wire, check, draft, facsimile or courier.

12         To the point that bitcoin wasn't in the eyes of the

13   legislature and necessarily or other potential forms of moving

14   funds that may well be, but I think Congress addressed that by

15   talking about any and all means, including but not limited to.

16   To me that evinces a Congressional purpose to capture any form

17   of movement of funds, whether it was on the ground at the time

18   Congress was enacting it or yet a gleam in some entrepreneur's

19   eyes.  Because the point here was not to simply define and

20   directly regulate everything Congress knew about at the time,

21   but to address in a meaningful way the broader problem, which

22   was movement of funds that were not traceable in the way that

23   the ordinary bank system is or other forms of fund transfer.

24         So I think Congress certainly did not directly

25   regulate bitcoin under § 1960 and they haven't done it yet.

1    Certainly the Commodity Futures Exchange Commission and others

2    are thinking about it now, but that's not the only way to

3    regulate or legislate regarding something like a new

4    technology, bitcoin.  To me you have to look at it

5    functionally, and in my -- at least as alleged in the

6    indictment, I think certainly what the Government has alleged

7    is a movement of funds from one address to another.

8          What we have is repeated allegations that the

9    Defendants got cash from customers in exchange for bitcoin, and

10   then the bitcoin was moved from a wallet associated with one of

11   the Defendants to a wallet associated with one of the purveyors

12   of the cash, and that, on its face, is something that fits

13   comfortably in my mind with transfer of funds.

14         It may be that the bitcoin representation of funds is

15   not as liquid as a U.S. dollar to be sure.  Maybe not as liquid

16   as a Euro.  Maybe not as liquid as some other currency like an

17   Irish punt, for example, but it's something still in common

18   parlance that we talk about as digital currency or

19   cryptocurrency because it has important features in that

20   primarily the value is in what it can get you, not the fact

21   that you happen to have some electronic address with bitcoin in

22   your wallet.

23         Yes.  It's nice to have carbon deposit in the bank,

24   but the real importance of it is that you can trade it or

25   translate it into something else that you want for your life

and goods or services, so in that sense I think bitcoin or
other digital currency comfortably fit within the ordinarily
meaning of the funds whether we are looking at it the way we
talk about it generally in the Oxford Dictionary or other
general discussions of the term.  And I think one of the cases
the Government cited for that, United States against Harmon
addresses that in a meaningful way, 474 F.Supp3d 76, from the
district -- of the District of Columbia in 2020.

When I move beyond my simple understanding or general
understanding of what the words themselves say to me when I
read § 1960, I look beyond that to what I would consider every
case I have been able to find or that every -- that any party
has cited to me, except for Petix, and all of them find that
bitcoin qualifies as money, and the movement of money as
alleged here would qualify as money transmitting, and I won't
take the time to cite them all.  They are in the brief of the
Government at least.  The Defense has addressed some of them,
but they are, as far as I can tell, unanimous, and that doesn't
make them right.  We all understand that a whole bunch of
judges can be wrong just as much as any one, but I think that
at least in my reading they make sense for the reasons I have
already addressed.

And Petix, although it points out in the important
recommendation a different way of looking at it or ways in
which bitcoin is different, does not, to my way of thinking,

persuasively undercut what I have described as my common

understanding of funds and transmission in the bitcoin context.

They may not function -- that is bitcoin may not function in

the same way the U.S. dollar or a Euro or punt functions, but

they function in an analogous enough way in my mind to fit

comfortably within the definition of money transmitting

contained in 18 USC 1960.

Those cases also go beyond 1960 and do talk about the

Bank Secrecy Act, and in particular, Title 31 § 5330 that has

an even broader definition of money transmitting business.  At

least looking at the statutory language of 530 -- or 5330 is, I

think, fair in the context of defining what 18 USC § 1960 means

because 1960(b)(1)(B) explicitly refers to that section.  And

it does, again, to me make clear what I think Congress did in

1960 itself, a desire to sweep broadly.  So it includes in the

definition of money transmitting business anything other than

the post office, and it covers any other person who engages as

a business in the transmission of funds, and again, including a

broad language, any person who engages as a business in an

informal money transfer system or any network of people who

engage as a business in facilitating the transfer of money

domestically or internationally outside of the conventional

financial institutions system.  And again, to me that conveys a

Congressional intent to broadly capture things that function

like our conventional use of a sovereign backed currency or at

1   least can function in that fashion, and I think we get there by

2   1960 alone.  Certainly by 1960 combined with the Bank Secrecy

3   Act statute without ever needing to get to the regulations that

4   Mr. Presant cites in the brief and here today.

5        When we get to the regulatory levels, I suppose in my

6   mind it's useful as a way of testing my sense of the scope of

7   these statutes, but I am reluctant to put too much more weight

8   on it than that.  It's not just because many in the Sixth

9   Circuit Court of Appeals have started to express some doubts as

10  well as some members of the Supreme Court about how far Chevron

11  deference should go generally, but I think particularly in

12  defining what we mean by criminal wrongdoing.  That carries

13  criminal penalties.  It's important to make sure that the law

14  makers are standing up on the line and taking responsibility

15  for what they want to define as crimes.  And although treasury

16  regulations that may change from one administration to another

17  can be helpful check points or reality checks, I'd be reluctant

18  to weigh too heavily on those or to rest my decision on them.

19  If I thought that's what it depended on I'd would think a lot

20  harder then this, but I don't.

21        In my perspective, the statue itself, § 1960 Title 18,

22  comfortably covers what the Government has alleged in

23  paragraphs -- Counts 1 to 14 and beyond that the Bank Secrecy

24  Act, I think, in its statutory text, reinforces that common

25  understanding.

1            So for those reasons I will deny the Defense motion to

2     dismiss Counts 1 to 14 of the indictment, and the case can move

3     forward from here.  Is there anything else we need to do today?

4            MR. PRESANT:  No, thank you, Your Honor.

5            THE COURT:  For from the Defense, anything else today?

6            MR. LENNON:  No, Your Honor.

7            MR. PURTZER:  No, thank you.

8            MR. BORGULA:  No.

9            THE COURT:  All right.  Good to see you all.

10           (Proceeding concluded, 2:29 p.m.)

```
 1                         REPORTER'S CERTIFICATE

 2

 3          I, Paul G. Brandell, Official Court Reporter for the

 4     United States District Court for the Western District of

 5     Michigan, appointed pursuant to the provisions of Title 28,

 6     United States Code, Section 753, do hereby certify that the

 7     foregoing is a full, true and correct transcript of the

 8     proceedings had in the within entitled and numbered cause on

 9     the date hereinbefore set forth; and I do further certify that

10     the foregoing transcript has been prepared by me or under my

11     direction.

12

13

14                         /s/ Paul G. Brandell

15                         Paul G. Brandell, CSR-4552, RPR, CRR

16                         U.S. District Court Reporter

17                         399 Federal Building

18                         Grand Rapids, Michigan  49503

19

20

21

22

23

24

25
```