UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

UNITED STATES OF AMERICA,                No. 1:21-cr-00040

           Plaintiff,                Hon. Robert J. Jonker

v.

CHRISTOPHER ALLAN BODEN,

           Defendant.

————————————————————————/

**BRIEF IN SUPPORT OF MOTION
FOR REDUCTION OF SENTENCE
UNDER 18 U.S.C. § 3582(c)(1)(A)**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

    Mr. Boden's Background .............................................................................................1

    Mr. Boden's Conviction and Sentence ......................................................................2

    Mr. Boden's Experience in Prison and Risks from COVID-19..................................3

    Mr. Boden's Requests for the BOP to reduce his sentence .......................................7

ARGUMENT ......................................................................................................................7

I.     Mr. Boden has exhausted his administrative remedies............................................8

II.    Mr. Boden is entitled to a reduction of his sentence and imposition of
home confinement under 18 U.S.C. § 3582(c)(1)(A) ..............................................8

    A.    Mr. Boden's risk of severe illness from COVID-19 constitutes a
compelling reason, and a reduction of his sentence is consistent
with applicable policy statements of the sentencing commission ..............9

    B.    There are extenuating circumstances in Mr. Boden's family that
constitute an extraordinary and compelling reason ..................................10

    C.    Considering the § 3553(a) factors, Mr. Boden's time served, plus a
term of home confinement constitutes a sentence sufficient but not
greater than necessary to accomplish the purpose of sentencing...............11

        1.    The nature and circumstances of the offense and Mr.
Boden's history and characteristics ...............................................11

        2.    The need for the sentence imposed to reflect the
seriousness of the offense, to promote respect for the law,
and to provide just punishment for the offense...............................13

        3.    The need for the sentence imposed to afford adequate
deterrence of criminal conduct.......................................................13

        4.    The need for the sentence imposed to protect the public
from future crimes of the defendant...............................................14

Page

5.    The need for the sentence imposed to provide the defendant
with needed training, medical care, or other correctional
treatment in the most effective manner...........................................14

6.    The kinds of sentences available and the kinds of sentence
and sentencing range on the date of sentencing............................14

CONCLUSION...................................................................................................... 15

CERTIFICATE OF COMPLIANCE ........................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Harrell v. United States*,
    No. 13-CR-20198, 2020 WL 2768883 (E.D. Mich. May 28, 2020)..........................................9

*Pepper v. United States*,
    562 U.S. 476 (2011)...................................................................................................................11

*Segars v. United States*,
    No. 16-CR-20222, 2020 WL 3172734 (E.D. Mich. June 15, 2020)...................................9, 14

*United States v. Alam*,
    No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020)...........................................................8

*United States v. Ford*,
    No. 00-CR-80974, 2020 WL 4207092 (E.D. Mich. July 22, 2020) .....................................9, 14

*United States v. Jackson*,
    No. 15-CR-20507, 2020 WL 4284305 (E.D. Mich. July 27, 2020) ...........................................9

*United States v. White*,
    No. 09-CR-00369, 2020 WL 3960830 (D. Md. July 10, 2020)...............................................11

**Federal Statutes**

18 U.S.C. § 3582................................................................................................................................8, 13

**Other Authorities**

Bianca Cseke, *Former members of The Geek Group indicted in connection to
    illegal Bitcoin trading*, Fox 17 (Mar. 2, 2021) ........................................................................13

Brendan Saloner, et al., Research Letter, *COVID-19 Cases and Deaths in Federal
    and State Prisons*, J. Am. Med. Ass'n (July 8, 2020).................................................................5

*Coronavirus Disease 2019 (COVID-19): Guidance on Management of COVID-19
    in Homeless Service Sites and in Correctional and Detention Facilities*, CDC
    (last updated Nov. 29, 2022)......................................................................................................5

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical
    Conditions*, CDC (last updated Nov. 22, 2022) .......................................................................4

Kelly Cromley, *Geek Group Shuts Down After Federal Authorities Raid Office
    For Crypto Trading*, Cointrust (Jan. 7, 2019)........................................................................13

Page(s)

Mem. from the Att'y Gen. to the Dir. of the BOP (Mar. 26, 2020) .....................................5

Off. of the Att'y Gen., Mem. to the Dir. of the BOP (Apr. 3, 2020) ................................6

Timothy Williams & Danielle Ivory, *Chicago's Jail Is Top U.S. Hot Spot as Virus Spreads Behind Bars*, N.Y. Times (Apr. 8, 2020) ......................................................5

U.S. Dept. of Justice, Mem. for Chief Exe. Officers from Assistant Dir. Of Corr. Programs Div. (Apr. 13, 2021) .............................................................................6

U.S. Sent'g Guidelines Manual § 1B1.13, Appendix n. 1 (U.S. Sent'g Comm'n 2021) .................................................................................................9, 10

iv

# INTRODUCTION

Since the Court sentenced Mr. Boden to 30 months in prison on February 2, 2022, Mr. Boden has been a model prisoner.  He has taken every First Step Act course offered at the prison, he teaches special education courses to other prisoners to help them toward earning their GEDs (with a focus on Special Education classes for dyslexic students) and, on information and belief, his PATTERN score is negative 3.

Despite these relative successes, Mr. Boden also faces serious risks due to his incarceration.  He has an elevated risk of getting seriously sick from contracting COVID-19, which alone constitutes an extraordinary and compelling reason for compassionate release.  He also has extenuating family circumstances that warrant his release.  Namely, Mr. Boden's immunocompromised wife will undergo hip surgery in February.

Mr. Boden respectfully requests that this Court reduce his term of imprisonment to time served, order his immediate release from FCI Oxford, and order as a condition of his release that he be placed under home confinement for a period equivalent to his initial prison term as a condition of his release as permitted under 18 U.S.C. § 3582.

# BACKGROUND

## Mr. Boden's Background

Chris Boden's life's work has been to educate, inspire, and above all, to help people in his community—whether that community is Mr. Boden's Westside neighborhood, the international membership base of his former nonprofit, The Geek Group, or the worldwide viewership of his educational videos.  Mr. Boden has worked for decades to make science and technology education accessible to everyone.  Accessibility was a primary focus of The Geek Group, the nonprofit Mr. Boden founded in 1994, when he was 18 years old.  The impact The

Geek Group had on Mr. Boden's Westside community and beyond is detailed in his Brief in Support of Motion for Downward Variance and the attached letters. (ECF No. 81.)

Mr. Boden's work has improved thousands of lives in a variety of ways with lasting results. That improvement, through his life's mission to inspire, educate, and entertain others, did not end when the Government indicted him; it did not end with the subsequent demise of The Geek Group and the sale of its building and science equipment; and it did not end when the Court sentenced Mr. Boden to a term of 30 months at FCI Oxford in March 2022.

## Mr. Boden's Conviction and Sentence

On September 30, 2021, Mr. Boden entered into a plea agreement with the Government in which he pleaded guilty to operating an unlicensed money transmitting business, money laundering, and structuring. (ECF No. 51.) More specifically, Mr. Boden sold Bitcoin without a license and without complying with know-your-customer requirements, and he supervised others at The Geek Group doing the same. (PageID.198.) The Court accepted Mr. Boden's guilty plea on October 18, 2021. (ECF No. 60.)

The Court sentenced Mr. Boden on March 1, 2022. Mr. Boden's guideline range was 168 to 210 months. (*Id.* at PageID.909.) The U.S. Probation Office's pre-sentence report (PSR) recognized that, in light of the circumstances of the offense, Mr. Boden's history and characteristics, lack of significant criminal history, and the need for the sentence imposed to reflect the seriousness of the offense and provide adequate deterrence, a sentence well below the guideline range was justified. The PSR recommended 37 months for each count, to be served concurrently. (*Id.*) This Court reached a similar conclusion and sentenced Mr. Boden to 30 months in prison for Counts 2, 16, and 21 of the Indictment, to be served concurrently. (*Id.* at PageID.986.)

## Mr. Boden's Experience in Prison and Risks from COVID-19

Mr. Boden has been incarcerated at FCI Oxford in Oxford, Wisconsin, since April 12, 2022.  Including current and anticipated good conduct time, Second Chance Act, First Step Act (FSA), and CARES Act credits, Mr. Boden anticipates being release in August 2023.  Mr. Boden, therefore, has fewer than 18 months remaining on his sentence and has served over 25% of his original 30-month sentence.

Mr. Boden is a model prisoner. He has completed every FSA course offered at FCI Oxford and has earned certificates for all of them.  He also works at the prison as a special education teacher and was recently drafted into an apprenticeship to be a teacher's aide.  He has helped dozens of other inmates make progress toward earning their GEDs and has undergone hundreds of hours of DVD training on the Barton Reading and Spelling System (a subset of the Orton-Gillingham education system for dyslexic students) to further improve his teaching skills and help his fellow inmates.  He also works as the Camp Photographer for Visiting Days.

Mr. Boden also worked in the maintenance department at FCI Oxford, where he painted the gymnasium.  He has also earned certifications to drive every vehicle and piece of heavy equipment at FCI Oxford, from cars and trucks to construction equipment like loaders and graders.  When the aging 1980s vintage computer that controlled the fuel-station broke down this past summer, Chris calculated the daily fuel usage for roughly a hundred vehicles manually, on paper, for months of usage.  He volunteers to unload the food delivery truck and he picks up cigarette butts around the prison.  On his own, he spent a week repairing and replacing all the shower heads in each bathroom in the institution. He is a model inmate by any measure.  And, on information and belief, Mr. Boden's PATTERN risk level is *negative* 3.

Though he cannot and does not maintain a job outside of prison, Mr. Boden has continued contact with his former employer, who eagerly awaits Mr. Boden's return.  (*See* Ex. 1.)  In fact, that employer has already informed Mr. Boden that he will be promoted from supervising three power plants to twelve.

Mr. Boden also anticipates working with a prospective nonprofit, Welcome Home, Neighbors, upon his release.  The intention of that nonprofit will be to support prisoner re-entry in the Grand Rapids community.  (*See* Ex. 2.)  Mr. Boden plans to provide refurbished laptops to returning inmates.  He will also continue to produce science and technology educational videos from his home shop, and he intends to write several more books in addition to the four he has already published.

But Mr. Boden has also struggled.  Last year, he and all of his cellmates caught COVID-19 as it spread throughout FCI Oxford.  COVID-19's risk does not fall equally on all members of the population.  The Centers for Disease Control and Prevention ("CDC") has advised that people of all ages with certain underlying medical conditions are at higher risk of severe illness from COVID-19.  *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC (last updated Nov. 22, 2022), https://bit.ly/2X1lEbn.

Mr. Boden has several conditions the CDC recognizes as COVID-19 risk factors.  He was a pack-a-day smoker for 20 years before switching to vaping about 10 years ago.  Current and former smokers can be "more likely to get very sick from COVID-19."  (*Id.*)  The CDC also recognizes that people "with learning disabilities" and people with "intellectual and developmental disabilities" both "may be more likely to get very sick from COVID-19 because of underlying medical conditions, living in congregate settings, or systemic health and social

inequities."  *Id.*  Mr. Boden has autism spectrum disorder, (*see* ECF No. 89, PSR ¶ 102, PageID.896), which further elevates his risk of getting dangerously sick from COVID-19.

Close quarters—such as those in jails and prisons—predictably put people at significantly higher risk of contracting and dying from COVID-19.  *Coronavirus Disease 2019 (COVID-19): Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities*, CDC (last updated Nov. 29, 2022), https://bit.ly/2CSE7QJ (illustrating that prisons present unique challenges for control of SARS-CoV-2 transmission.)  Experience has proven that this risk is real.  At one point in the pandemic, the Cook County (Illinois) Jail was "the largest-known source of coronavirus infections" in the United States.  Timothy Williams & Danielle Ivory, *Chicago's Jail Is Top U.S. Hot Spot as Virus Spreads Behind Bars*, N.Y. Times (Apr. 8, 2020), https://nyti.ms/3cRXrKn.  And according to a study recently published by the *Journal of the American Medical Association*, through June 6, 2020, the COVID-19 case rate for prisoners was 5.5 times higher than the general population; the death rate for prisoners was 3.0 times higher.  Brendan Saloner, et al., Research Letter, *COVID-19 Cases and Deaths in Federal and State Prisons*, J. Am. Med. Ass'n (July 8, 2020), http://jamanetwork.com/article.aspx?doi=10.1001/jama.2020.12528.

Congress and the Department of Justice have recognized the unique risks that COVID-19 poses to federal inmates and staff.  On March 26, 2020, the Attorney General directed the BOP to prioritize the use of home confinement for at-risk inmates who are nonviolent, pose minimal likelihood of recidivism, and might be safer serving their sentences at home.  Mem. from the Att'y Gen. to the Dir. of the BOP (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

The BOP offered additional guidance and direction in a Memorandum for Chief Executive Officers on April 13, 2021.  The updated memorandum sets out nine factors for the BOP to consider when determining whether an inmate is suitable for home confinement: the inmates disciplinary record; whether the inmate has a verifiable release plan; whether the inmate's primary offense is not violent, a sex offense, or terrorism related; confirming the inmate does not have a current detainer; ensuring the inmate is low or minimum security; ensuring the inmate has a low or minimum PATTERN score; ensuring the inmate has not engaged in violent or gang-related activity while incarcerated; reviewing the COVID-19 vulnerability of the inmate in accordance with CDC guidelines; and confirming the inmate has served 50% or more of his or her sentence.  U.S. Dept. of Justice, Mem. for Chief Exe. Officers from Assistant Dir. Of Corr. Programs Div. (Apr. 13, 2021),

https://www.bop.gov/foia/docs/Home%20Confinement%20memo_2021_04_13.pdf.

The following day, the President signed the Coronavirus Aid, Relief, and Economic Security Act, popularly known as the "CARES Act."  The CARES Act authorized the Attorney General to substantially increase the use of home confinement for convicted prisoners for the duration of the COVID-19 emergency.  H.R. 748, 116th Cong. § 12003(b)(2) (2020).  The Attorney General has since directed the BOP to "immediately review all inmates who have COVID-19 risk factors" and, for those inmates who are suitable for home confinement, "immediately" move forward with transferring them to home confinement.  Off. of the Att'y Gen., Mem. to the Dir. of the BOP (Apr. 3, 2020),

https://www.justice.gov/file/1266661/download.  The Attorney General emphasized that, "[g]iven the speed with which this disease has spread through the general public, it is clear that time is of the essence." *Id.*  Time is of the essence for Mr. Boden, also.  As winter approaches

and the cases of COVID-19 are like to increase around the country, Mr. Boden hopes to avoid contracting COVID-19 for a second time in prison.

## Mr. Boden's Requests for the BOP to reduce his sentence

On October 9, 2022, Mr. Boden filed two administrative requests with the Bureau of Prisons.  One request was for home confinement pursuant to the CARES Act.  (Ex. 3.)  The other was for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Ex. 4.)  Mr. Boden meets or exceeds the factors detailed in the April 13, 2020, memorandum.  His disciplinary record is impeccable and he has a release plan.  His primary offense is not violent, a sex offense, or terrorism related, and he does not have a detainer.  His PATTERN score, which reflects risk of recidivism, is a negative 3.  He has never engaged in violent or gang activity while incarcerated, and he faces a real risk of getting seriously sick if he contracts COVID-19.  Nevertheless, the BOP denied both of Mr. Boden's requests.

## ARGUMENT

This Court should exercise its discretion to reduce Mr. Boden's term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).  The extraordinary risk that COVID-19 poses to inmates generally and, given his health conditions, to Mr. Boden in particular, constitutes an extraordinary and compelling reason for his early release.  Moreover, there are extenuating circumstances in Mr. Boden's family that constitute an extraordinary and compelling reason for his early release.  Mr. Boden does not pose any risk to the community, and a reduced sentence would be consistent with the factors this Court must consider when initially determining a sentence.

## I.      Mr. Boden has exhausted his administrative remedies.

Section 3582(c)(1)(A) provides that a defendant may bring a motion for modification of his sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Mr. Boden submitted two separate requests on October 9, 2022: One for home confinement under the CARES Act and one for compassionate release under Section 3582(c)(1)(A).  (Exs. 3 & 4.)  His requests were denied.

Accordingly, Mr. Boden has exhausted his administrative remedies for purposes of § 3582(c)(1)(A).  *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *3 (6th Cir. June 2, 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."); *id.* at *4 ("If [administrative review] also comes up short (*or if 30 days pass*), prisoners have the option to go to federal court." (emphasis added)).

## II.     Mr. Boden is entitled to a reduction of his sentence and imposition of home confinement under 18 U.S.C. § 3582(c)(1)(A).

Separate and apart from the BOP's discretionary authority to place a prisoner in home confinement, 18 U.S.C. § 3582(c)(1)(A) gives this Court discretion to "reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Boden satisfies all these criteria.  He respectfully submits that he should be placed under home confinement for a period equivalent to his initial prison term as a condition of his release as permitted under § 3582.

## A.    Mr. Boden's risk of severe illness from COVID-19 constitutes a compelling reason, and a reduction of his sentence is consistent with applicable policy statements of the sentencing commission.

The application notes to § 1B1.13 of the Sentencing Guidelines explain that extraordinary and compelling reasons exist when (a) the defendant is suffering from a terminal or serious illness or experiencing deteriorating health because of the aging process, (b) the defendant is aged and in declining health, (c) there are extenuating circumstances in the defendant's family, or (d) for other reasons.  U.S. SENT'G GUIDELINES MANUAL § 1B1.13, app. note 1(c) (U.S. SENT'G COMM'N 2021).  Numerous courts have recognized that COVID-19 is an extraordinary and compelling reason to reduce a defendant's sentence when that defendant suffers from other health conditions that increase his risk of severe illness from the virus.  *E.g.*, *United States v. Jackson*, No. 15-CR-20507, 2020 WL 4284305, at *2 (E.D. Mich. July 27, 2020); *United States v. Ford*, No. 00-CR-80974, 2020 WL 4207092, at *3 (E.D. Mich. July 22, 2020); *Segars v. United States*, No. 16-CR-20222, 2020 WL 3172734, at *2–3, 5 (E.D. Mich. June 15, 2020); *Harrell v. United States*, No. 13-CR-20198, 2020 WL 2768883, at *2–3, 4 (E.D. Mich. May 28, 2020).  Consistent with Congress's, the Attorney General's, and the medical community's recognition that prisons create unique challenges for managing the coronavirus, these courts have determined that inmates at risk of severe illness from COVID-19 are safer at home.

To be sure, COVID-19 alone does not constitute an extraordinary and compelling reason for release.  But Mr. Boden does not seek compassionate release solely because the coronavirus exists.  The BOP has been previously unable to prevent the coronavirus from entering and spreading at FCI Oxford, the BOP institution where Mr. Boden is incarcerated.  While COVID-19 numbers at FCI Oxford are not presently high, Mr. Boden is at risk of contracting the disease again as COVID rates climb in the winter months.

Mr. Boden has already contracted COVID-19 while incarcerated at FCI Oxford once.  He desperately hopes to avoid contracting it again in light of the elevated risk the disease poses to him.  Mr. Boden was a pack-a-day cigarette smoker for 20 years and has Autism Spectrum Disorder and ADHD, each of which are recognized by the CDC as increasing his risk of severe illness from COVID-19.  He is therefore vulnerable to severe illness from COVID-19, and he is at demonstrably higher risk of contracting the coronavirus at FCI Oxford than at home.  Accordingly, extraordinary and compelling reasons exist for Mr. Boden's immediate release and home confinement.

## B.      There are extenuating circumstances in Mr. Boden's family that constitute an extraordinary and compelling reason.

The above-noted application notes to § 1B1.13 of the Sentencing Guidelines also explain that extraordinary and compelling reasons exist when there are extenuating circumstances in the defendant's family.  U.S. SENT'G GUIDELINES MANUAL § 1B1.13, app. note 1 (U.S. SENT'G COMM'N 2021)  Those circumstances exist here.

Mr. Boden's wife, Lis Vogt, has Ehlers Danlos Syndrome, Epilepsy, Autonomic Dysfunction, and several autoimmune diseases.  Ehlers Danlos Syndrome is a connective tissue disorder characterized by joint hypermobility, among other issues.  For Ms. Vogt, this means joint instability, dislocations, and tears attendant to those dislocations.  Ms. Vogt dislocated her hip in May and is presently scheduled for surgery to mend a torn labrum in that hip in March 2023.[1]  Ms. Vogt's autoimmune diseases will only complicate her recovery from an already difficult surgery—in terms of both wound infection risk and the risks attendant to travelling to

---

[1] Ms. Vogt's surgery date is tentative because she cannot have surgery unless she has been seizure-free for six months.  Her last seizure occurred over the summer and her seizures are infrequent.

physical therapy. And because of the infection risk related to the surgery, she must temporarily pause her autoimmune medication, which means bouts of arthritis, psoriasis, interstitial cystitis and colitis. The anticipated recovery time is between 4 and 12 months. Prior to the surgery, Ms. Vogt has limited mobility and function, which has limited her day-to-day function. She is also entering a cardiac rehabilitation program and finding it to be a daunting prospect with the limitations posed by her injury. It is time intensive and exhaustive.

Mr. Boden needs to be home to care for his wife, a fact she can attest to. (See Ex. 5.) Her complications constitute an extenuating circumstance and a compelling reason for Mr. Boden's immediate release subject to home confinement.

### C. Considering the § 3553(a) factors, Mr. Boden's time served, plus a term of home confinement constitutes a sentence sufficient but not greater than necessary to accomplish the purpose of sentencing.

Particularly after considering Mr. Boden's post-sentencing conduct, *see Pepper v. United States*, 562 U.S. 476, 490–93 (2011); *United States v. White*, No. 09-CR-00369, 2020 WL 3960830, at \*4 (D. Md. July 10, 2020) (following *Pepper* in case under § 3582(c)(1)(A)), reducing Mr. Boden's term of imprisonment to time served is consistent with the factors this Court must consider under § 3553(a).

#### 1. The nature and circumstances of the offense and Mr. Boden's history and characteristics.

As illustrated in Mr. Boden's Brief in Support of his Motion for Downward Variance, (ECF No. 81), Mr. Boden is a pillar of his community, and he has worked hard his entire adult life to expand access to science and technological education. That education was not limited to the typical classroom subjects, and it extended to things like cryptocurrency—Bitcoin, for example. Mr. Boden taught classes at The Geek Group that educated people as to how Bitcoin

and the technology underlying it works and how to buy and sell Bitcoin on their own.  Mr. Boden's goal, as he explained to the Probation Office, was "simply to get Bitcoin into the hands of as many people as possible.  It was to educate and inspire as many people as we could with the incredible potential all this new technology has to offer the world."  *Id.*

Mr. Boden eventually tried to make good on those goals by offering Bitcoin for sale at The Geek Group itself and using the proceeds to fund activities at The Geek Group.  But those sales were almost entirely handled by himself and his co-defendants; The Geek Group was no criminal enterprise, and the vast majority of its volunteers had nothing to do with the sale of Bitcoin.  At their core, Mr. Boden's acts centered around the sale of Bitcoin for cash.  The profits from those sales—when there were profits—did not go to enrich Mr. Boden or his co-defendants. Instead, the proceeds went toward keeping the lights on, the heat on, and the mortgage paid at The Geek Group, which in turn provided technical and scientific education to a wide array of people in Grand Rapids and beyond.  Nevertheless, Mr. Boden does not treat his commission of this offense lightly.  Nor does he minimize his own role in the offense.

Mr. Boden's characteristics also matter.  As detailed above, he is a model prisoner.  His work as a special education teacher and apprentice to become a teacher's aide has helped other inmates progress toward earning GEDs.  He continues to improve his teaching abilities by training under the Barton Reading and Spelling System. He also works as the FCI Oxford Camp Photographer on Visiting Days and volunteers his time to better the prison.  Moreover, his PATTERN score is *negative* 3.  He has no disciplinary record while incarcerated.  His post-sentencing acts, therefore, support compassionate release under § 3582.

12

2.    *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

Mr. Boden respectfully submits that the eight months he has served in prison is sufficient to reflect the seriousness of his offense, promote respect for the law, and justly punish him. Continued incarceration in the BOP system is not necessary to promote respect for the rule of law in this case.  Mr. Boden's request is not to shirk responsibility or punishment.  For that reason, he respectfully submits that the Court could use its authority to impose conditions on release to order home confinement for a period equal to the Court's original sentence.  *See* 18 U.S.C. § 3582(c)(1)(A).

3.    *The need for the sentence imposed to afford adequate deterrence of criminal conduct.*

Mr. Boden has already served eight months in prison.  That time in prison, coupled with his inability to help his wife, amply deters Mr. Boden from future criminal conduct.  What is more, even if this Court grants this Motion, Mr. Boden will continue to be subject to a three-year term of supervised release.  The Probation Office's supervision will further deter Mr. Boden from committing additional crimes.  And, as noted above, Mr. Boden submits that the Court sentence him to home confinement equivalent to his original 30-month sentence.

As noted in Mr. Boden's sentencing memorandum, ECF No. 92, Mr. Boden's and The Geek Group's downfall were uniquely public.  Mr. Boden did not only lose what he worked for, he *publicly* lost what he worked for.  His indictment and subsequent plea for selling Bitcoin (and The Geek Group's dissolution as a result of his actions) was well covered in both local and national news media.  *See, e.g.*, Bianca Cseke, *Former members of The Geek Group indicted in connection to illegal Bitcoin trading*, Fox 17 (Mar. 2, 2021), https://tinyurl.com/mtxczrje; Kelly Cromley, *Geek Group Shuts Down After Federal Authorities Raid Office For Crypto Trading*,

Cointrust (Jan. 7, 2019), https://tinyurl.com/mu6an34z.  Mr. Boden himself has publicly

accepted responsibility for his actions and his role in the offense and did so again at sentencing.

Mr. Boden's public acceptance of not only responsibility but consequences helps to ensure that

others are deterred from engaging in similar behavior in the future.

> ### 4. *The need for the sentence imposed to protect the public from future crimes of the defendant.*

Mr. Boden does not pose a danger to the public.  As discussed above, specific deterrence

is already achieved in this case.  What is more, Mr. Boden's release to home confinement could

allow him to benefit the public by providing refurbished laptops to prisoners reentering the

community in Grand Rapids.  And the sooner Mr. Boden can resume working, the sooner he can

make good on his restitution obligations.

> ### 5. *The need for the sentence imposed to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.*

The sentence presently imposed will not provide Mr. Boden with any needed training or

medical care.

> ### 6. *The kinds of sentences available and the kinds of sentence and sentencing range on the date of sentencing.*

In the context of a motion under § 3582(c)(1)(A), this Court has the power to reduce Mr.

Boden's term of imprisonment and sentence him to a term of supervised release.  *E.g.*, *Ford*,

2020 WL 4207092, at *1 (releasing defendant sentenced under mandatory minimum and

ordering that he begin his term of supervised release immediately); *Segars*, 2020 WL 3172734,

at *5 (same).  The Court may also impose other conditions, such as home confinement.  Indeed,

that is precisely what Mr. Boden requests here: to have his original sentence reduced and impose

a term of home confinement equivalent to his initial 30-month sentence.

Regarding the final two 3553(a) factors—the need to avoid sentencing disparities and to provide restitution to victims—Mr. Boden respectfully submits that those factors do not alter the analysis for this motion.

## CONCLUSION

Mr. Boden respectfully requests that the Court order him released from FCI Oxford and impose a condition of home confinement for a period equivalent to his original sentence as a condition of his release.

Dated: December 9, 2022

/s/ Brian P. Lennon
Brian P. Lennon (P47361)
Paul Beach (P82036)
Warner Norcross + Judd LLP
Attorneys for Christopher Boden
150 Ottawa Ave. NW, Ste. 1500
Grand Rapids, MI 49503-2832
(616) 752-2000
blennon@wnj.com
pbeach@wnj.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that the Defendants' Brief in Support of Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A) complies with the word-count limitations and the local rules of this Court.  The brief contains 4,299 words of 12-point type.  The word processing software used to prepare this brief was Microsoft Word.

Dated: December 9, 2022

*/s/  Brian P. Lennon*
Brian P. Lennon (P 47361)
Paul H. Beach (P82036)
Warner Norcross + Judd LLP
150 Ottawa Avenue, NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
blennon@wnj.com
pbeach@wnj.com

*Attorneys for Defendant Christopher Boden*

189725.189725 #27591806-7