UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                              No. 1:21-cr-00040

CHRISTOPHER ALLAN BODEN,          HON. ROBERT J. JONKER
                                      United States District Judge

        Defendant.

_____/

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Christopher Allan Boden has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying in part on the threat posed by the COVID-19 pandemic, and in part on his family circumstances.  The United States respectfully opposes the motion.  The Court should deny the motion because Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute.

**Factual Background**

**1.  Offense conduct and the motion for compassionate release**

On October 18, 2021, Defendant pled guilty to operating an unlicensed money transmitting business, money laundering, and structuring.  (PageID.194–206, 215.)  The Court sentenced Defendant to 30 months in prison on February 25, 2022.  (PageID.985–86.)  Defendant was committed to the custody of the Bureau of Prisons ("BOP") on April 12, 2022, according to BOP records.  As of this filing, he has served approximately 10 months of the sentence.

On December 9, 2022, fewer than eight months after he reported to BOP, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the bases of (1) the COVID-19 pandemic, especially considering his history of smoking and his claimed diagnoses of autism spectrum disorder and ADHD, and (2) an upcoming surgery for his wife, who was also a co-defendant, whom the Court sentenced to a term of probation. (PageID.1071–92.)  The Court ordered the government to respond.  (PageID.1118.)  The government respectfully opposes the motion for compassionate release for the reasons explained below.

## 2.  BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the BOP made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization.  Those efforts continue.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/.  As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.  When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

2

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.  This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.  The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

Moreover, with rare exceptions, BOP has offered a vaccine to every inmate in BOP-managed institutions.  BOP has administered a total of approximately 347,206 doses to inmates and staff.  https://www.bop.gov/coronavirus/ (last visited Feb. 7, 2023).  Going forward, BOP will continue to offer vaccines to newly arrived inmates, and to those inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available.

At Oxford FCI, where the defendant is held, BOP has fully vaccinated 115 staff members, and 848 inmates (which is 67.5% of the current inmate population and does not account for those additional inmates who declined vaccination).  *Id.*

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.  The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

**Legal Framework**

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009).  Absent a specific statutory exception, the district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  The district court's authority to modify a sentence is thus "narrowly circumscribed."  *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008); *accord United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001).

Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is one of the narrow exceptions permitting a sentence modification.  Under § 3582(c)(1)(A), district courts may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). The district court may consider a motion under § 3582(c)(1)(A) only if the defendant has exhausted administrative remedies; that is, asked BOP to file such a motion on his or her behalf, and exhausted administrative appeal rights or waited until 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).[1]

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A), which provides that a court may reduce the term of

---

[1] Defendant has exhausted his administrative remedies.

imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons"—if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia"; or if the defendant is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. USSG § 1B1.13, cmt. n.1(A). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)– (C). Relevant here, one such circumstance concerns "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13 n.1(C)(ii). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

The policy statement refers only to motions filed by the BOP Director because it was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c)(1)(A). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* Section 3582(c) (2012). The First

Step Act changed this, allowing defendants to bring motions directly in a district court after complying with the exhaustion requirement set forth above. The Sixth Circuit has held that USSG § 1B1.13 is not binding as to defendant-filed motions, and therefore a district court need not consider it when deciding a § 3582(c)(1)(A) motion filed by a defendant. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). This is in accord with most circuits. *See Elias*, 984 F.3d at 519. *But see United States v. Bryant*, 996 F.3d 1243, 1265 (11th Cir. 2021) (holding district courts are bound by USSG § 1B1.13), *cert. denied*, No. 20-1732, 2021 WL 5763101 (U.S. Dec. 6, 2021).

Nonetheless, as the Seventh Circuit has explained, "the absence of an applicable policy statement" does not "creat[e] a sort of Wild West in court, with every district judge having an idiosyncratic release policy." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Thus, "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* And, "[i]n this way the Commission's analysis can guide discretion without being conclusive." *Id.* (citing, as indirect authority, *Gall v. United States*, 552 U.S. 38, 49–50 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007)). *See also United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021) (district courts "may look to § 1B1.13 as relevant, even if [it is] no longer binding").

The Court should explain the basis for its decision in sufficient detail for a reviewing court to ascertain the reasons underlying it. *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1106).

6

**Argument**

This Court should deny Defendant's motion, as Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction.  In addition, Defendant has not demonstrated that a reduction is warranted in light of the relevant § 3553(a) factors.

## I.  Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

Defendant's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release.  As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  Even though the Commission's policy statement defining "extraordinary and compelling reasons," USSG § 1B1.13, is no longer binding on courts evaluating defendant-filed motions, *Elias*, 984 F.3d at 519, as noted above, the Court may consider the criteria set forth in Application Note 1 to the guideline as guideposts in exercising its discretion.  *Tomes*, 990 F.3d at 503 n.1.  This is particularly appropriate where, as here, the defendant argues that his medical conditions constitute "extraordinary and compelling reasons" for release, a basis contemplated by the Commission.  *See* USSG § 1B1.13, cmt. n.1(A).  As noted above, the conditions recognized by the Commission include (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

The mere existence of the COVID-19 pandemic, which poses a general threat to every person in the country, does not fall into either of those categories and therefore could not alone

provide a basis for a sentence reduction.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *United States v. Underwood*, No. 2:14-CR-089, 2020 WL 7778394, at *3 (E.D. Tenn. Dec. 30, 2020) ("the COVID-19 pandemic cannot alone justify compassionate release").  *Cf. United States v. Bothra*, No. 20-1634, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) (order) (affirming district court's denial of motion for temporary release under 18 U.S.C. § 3142(i), noting, "[c]ourts have . . . been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason") (citing *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020)).  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

Nonetheless, courts have considered the risk that an inmate will become seriously ill from COVID-19 in determining whether he or she has demonstrated an "extraordinary and compelling reason."  In *Elias*, the Sixth Circuit held that a district court did not abuse its discretion in applying the following two-part test for determining whether the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."  984 F.3d at 520–21.  However, since vaccines have become widely available, the analysis has shifted.  The Sixth Circuit has held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  *United States v. Lemons*, 15 F.4th 747 (6th Cir. 2021) (citing *United States*

*v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). *See also United States v. Traylor*, 16 F.4th 485,

487 (6th Cir. 2021). In light of the widespread availability of vaccines, to establish an

extraordinary and compelling reason based on the risk of contracting COVID-19, an inmate must

show he is "unable to receive or benefit from a vaccine" in some way. *Lemons*, 15 F.4th at 751

(quoting *Broadfield*, 5 F.4th at 803). Defendant has not made, or even attempted to make, such a

showing here.

      According to BOP medical records, which can be provided to the Court upon request,

Defendant was vaccinated prior to arriving at BOP—specifically, he received three shots of the

Pfizer vaccine at local Meijer stores. This fact alone forecloses Defendant's argument that there

are extraordinary and compelling reasons based on the COVID-19 pandemic.

      To the extent the Court reaches Defendant's claimed medical conditions that put him at

increased risk from COVID-19, his argument fails. According to BOP medical records,

Defendant's only current medical condition is "[m]ental disorder, not otherwise specified,"

which it details as a "claimed history of autism spectrum disorder and generalized/social

anxiety." There is no reference to ADHD. The presentence investigation report prepared in

Defendant's case makes a passing reference to "the first time [Defendant] heard the word

autistic" but does not clearly indicate Defendant was being treated for any mental condition. It

does say that while in school—decades ago—he was both diagnosed as "gifted" and "severely

emotionally impaired." (PageID.896.)

      Thus, at the outset, Defendant has not met his burden of proving he actually suffers from

a mental disorder. His self-serving statements should be accorded little weight by the Court for

reasons explained in the government's sentencing memorandum: in connection with sentencing,

Defendant made multiple factual assertions to the Court that were untrue. (PageID.670–83.)

Even assuming Defendant does suffer from autism and ADHD, those are ordinary conditions that many people live with.  Defendant cites no authority for the claim that either of these conditions actually increases the risk of COVID-19, only for the much more general claim that people with learning and intellectual disabilities—a category that covers a host of conditions—"may" be more likely to suffer severe COVID-19.  But not only does Defendant present as intellectually gifted, rather than disabled, this generalized assertion is insufficient to meet his burden of demonstrating an increased risk of COVID-19 and an inability to benefit from vaccination, all the more so because he has both received a booster dose of the vaccine and also reports already surviving one bout of COVID-19, which facts tend to suggest he is not at increased risk.  In any event, courts rejected similar arguments even prior to the availability of vaccines.  *See, e.g.*, *United States v. Wragg*, No. 15-398, 2020 WL 4015204, at *8 (E.D. Pa. July 16, 2020) (epilepsy, hypertension, mild obesity, and mental health issues are not risk factors); *United States v. Busby*, No. 2:15-cr-00353, 2020 WL 3883652, at *2–3 (D. Nev. July 8, 2020) (ADHD, bipolar disorder, anxiety, and panic attacks are not risk factors, even when combined with additional physical conditions).

The same holds for Defendant's history of smoking: there are many former smokers, and formerly smoking, combined with the existence of COVID-19, does not amount to extraordinary and compelling reasons.  *See, e.g.*, *United States v. Powell*, No. 20-14236, 2021 WL 3028766, at *2 (11th Cir. July 19, 2021) (per curiam) (no abuse of discretion in determining that well-controlled COPD and a 30-year history of smoking did not present an extraordinary and compelling reason); *United States v. Peterson*, No 02-611, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (holding no extraordinary and compelling reasons where the defendant "suffers from hypertension, asthma, and prediabetes and . . . he is obese and a former smoker," where the

10

defendant was vaccinated); *United States v. Kupahu*, Nos. 03-00179 & 05-00490, 2020 WL 7246911, at *6 (D. Haw. Dec. 9, 2020) ("The Court finds that a history of smoking alone is insufficient to establish extraordinary and compelling reasons for compassionate release."); *United States v. Lamas*, No. 12-20119-02, 2020 WL 5593839, at *3 (D. Kan. Sept. 18, 2020) (collecting cases) (status as former smoker does not present an increased risk); *Saxon v. United States*, No. 12 Cr. 320, 2020 WL 4548078, at *3 (S.D.N.Y. Aug. 5, 2020) ("[B]eing a smoker and having high blood pressure are common conditions and do not rise to the level of extraordinary and compelling circumstances warranting release."); *United States v. Greene*, No. 1:17-cr-00012, 2020 WL 4475892, at *4 (D. Me. Aug. 4, 2020) ("Given that Mr. Greene is only 40 years old and does not present with medical conditions that certainly elevate his risk from COVID-19, I do not find that he has established extraordinary and compelling grounds for release because he is a former smoker."); *United States v. Tranter*, 471 F. Supp. 3d 861, 865 (N.D. Ind. 2020) (compassionate release denied for an obese former smoker).

Defendant's arguments regarding his family circumstances fare no better. The relevant provision indicates that extraordinary and compelling reasons can be found where the defendant proves "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13 n.1(C)(ii). Defendant contends that his wife's upcoming surgery meets these criteria.

As an initial matter, Defendant has not met his evidentiary burden. He submitted no medical records from his wife's provider to demonstrate the necessity of the surgery and the extent of her anticipated incapacitation afterward. As explained above, Defendant's (and his co-defendant wife's) self-serving statements are not sufficient to meet this burden, either generally or under the circumstances of the case. Other courts have rejected similar claims without

sufficient evidence.  *See United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at \*7 (E.D. Pa. Oct. 9, 2020) (rejecting compassionate release motion where the defendant "has not shown that his wife is incapacitated as a result of her medical condition"); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at \*3 (D.N.J. July 21, 2020) (rejecting claim because "Doolittle has presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated.  He argues that she has difficulty handling daily tasks on her own and is desperate for him to return home, but there is no indication that she is unable to care for herself or that she is immobile.").  Notably, Defendant does not even assert in his brief that his wife will be "incapacitated" as a result of the surgery, only that recovery will be difficult; in any case, she is not yet incapacitated.

But even were Defendant's wife to be "incapacitated" because of the upcoming surgery, which cannot be put off until after Defendant's anticipated release date, Defendant would still need to prove that he is "the only available caregiver."[2]  *See United States v. Cole*, No. 18-20237, 2021 WL 194194, at \*3 (E.D. Mich. Jan. 20, 2021) ("The hardship to Cole's family that may result is unfortunate, but not unusual.  A crime often inflicts harm, not only on a direct victim, but on those in a defendant's circle of family and friends who depend on that defendant for all manner of support.  Often, a defendant's family's needs can be met through other family members, neighbors, faith groups, community organizations and government agencies.  Hopefully, the Cole family can find a solution in those possibilities."); *United States v.*

---

[2] Defendant discloses that the "surgery date is tentative," which suggests it can be flexible.  (PageID.1085 n.1.)  It is unclear exactly when Defendant will be released from a BOP facility to some other arrangement.  Defendant claims he will be released in August 2023, (PageID.1078), his BOP individualized needs plan recommends placement in home confinement in January 2024, BOP records say he is eligible for home detention in February 2024, the BOP website calculates a technical projected date in May 2024, and the statutory term ends in October 2024.

*Richardson*, No. 5:18-CR-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020) ("The court declines to grant compassionate release in the absence of a robust evidentiary showing that defendant is the only available caregiver."); *United States v. Carr*, No. 16-cr-054, 2020 WL 1815910, at *4 (D. Colo. Apr. 10, 2020) (denying compassionate release where other care is available for the defendant's minor children).  Defendant conspicuously does not acknowledge this legal requirement in his brief or make any attempt to address it.  Because Defendant's wife was also convicted in this case, the Court has insight into her personal circumstances. Defendant's wife appears to have a supportive family, including two parents in nearby Indiana, and a sister in Nevada.  (PageID.409.)  Defendant's wife also has "roommates" and "a lot of friendships."  (PageID.411–12.)  Indeed, Defendant's wife's sentencing record contains many letters from her many supporters.  (PageID.831–32.)  Defendant must prove none of these people, or others, could care for his wife during whatever period of incapacitation she has following surgery, but he has not even attempted to do so.  Moreover, the Court was aware of Defendant's wife's medical conditions at the time it imposed sentence.  *See United States v. Hill*, No. 5:18-CR-50022, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020) ("Assuming Mr. Hill's wife is, indeed, incapacitated by her cancer diagnosis, the Court would still need additional, credible evidence as to the lack of alternative caregivers in order to make a definitive finding that Mr. Hill is the only available caregiver.  Moreover, the Court was apprised at the time of sentencing of the facts concerning Mrs. Hill's illness and the challenges she might face in receiving care after Mr. Hill was incarcerated. The Court took these facts into account when imposing sentence.").

Defendant argues about various personal factors and accomplishments, but that information was in large part considered by the Court at the time of sentencing.  "[F]acts that

existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). "[D]efendants seeking compassionate release must show that their 'personal circumstances' have 'changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing.'" *Id.* at 569–70 (quoting *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021), and citing *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021)). Thus, "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.* at 570.

Defendant therefore has not satisfied his burden to demonstrate extraordinary and compelling reasons within the meaning of § 3582(c)(1)(A)(i).

## II.    The § 3553(A) Factors Weigh Against Defendant's Release.

Defendant has failed to demonstrate the § 3553(a) factors weigh in favor of his immediate release. This is an independent basis on which the Court may deny the motion. *Hampton*, 985 F.3d at 533.

Defendant was a money launderer, who specifically marketed his services as a way to circumvent the controls of the lawful banking system, as explained in more detail in the government's sentencing memorandum. He also solicited an undercover agent to assault someone who owed him money, among other crimes. In connection with sentencing, Defendant blamed the government and minimized his own conduct. (PageID.670–83.) He appears to continue to do the latter in the pending motion by refusing to acknowledge the extent and seriousness of his scheme, opting instead to characterize it as a mere educational mission to expose many people to Bitcoin. (PageID.1087.) Defendant faced a Guidelines range of 168 to

210 months, (PageID.992), and the Court awarded a substantial downward variance to 30 months.

Defendant has served only a small portion of the ordered term.  He has served just approximately 33% of the full term, and only about 40% of the term assuming all good-time credit remains intact.

Simply put, the § 3553(a) factors do not warrant release at this time.  Defendant received a substantial downward variance and served a fraction of his term before moving for compassionate release.  Specific and general deterrence, promotion of respect for the law, the provision of just punishment, and incapacitation will all be served by requiring Defendant to serve the imposed term.  It was less than a year ago when Defendant told the Court that the prosecution was "foolishness" and the government needed a "sense of humor."  (PageID.678–79.)  Defendant's brief and even his compassionate release request to the warden do not indicate that his attitude has changed; to the contrary, those materials echo the person who appeared before the Court at the time of sentencing.  Defendant has not yet come to terms with the gravity of his criminal conduct and the reasons he is in prison.  (See, e.g., PageID.1104 ("Nobody has ever given me a document for what lessons I was supposed to learn from the experience of my incarceration . . . .  There is no penological benefit to my being [incarcerated].").)

Accordingly, based on the § 3553(a) factors, and the totality of relevant circumstances, this Court should deny Defendant's motion.

## Conclusion

For these reasons, this Court should deny Defendant's motion for a sentence reduction.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: February 7, 2023

/s/Justin M. Presant
JUSTIN M. PRESANT
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
justin.presant@usdoj.gov

16